IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBOTT DIABETES CARE INC. ET AL, | No. C05-03117 MJJ |
| Plaintiff, | **ORDER GRANTING ROCHE'S AND BAYER'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON LACHES DEFENSES** |
| v. | |
| ROCHE DIAGNOSTICS CORPORATION ET AL, | |
| Defendant. | |

## INTRODUCTION

Before the Court are the motions for partial summary judgment brought by defendants Roche (Docket No. 225) and Bayer (Docket No. 207), both seeking entry of an order granting summary judgment on their defenses of laches. Plaintiff Abbott opposes both motions.

For the following reasons, the Court **GRANTS** both motions.

## FACTUAL BACKGROUND

Abbott's '551 patent issued on October 13, 1998, at a time that Roches' Comfort Curve test strips and Bayer's AUTODISC were already on sale in the United States. For purposes of this motion, the evidence shows, and the parties do not dispute, that Abbott had actual or constructive knowledge of the allegedly infringing nature of these two products by late 1998. Abbott filed the instant patent infringement action against Roche and Bayer on August 1, 2005, but its initial Preliminary Infringement Contentions did not identify Comfort Curve or AUTODISC as accused products. On May 15, 2006, Abbott brought a motion leave to amend its Preliminary Infringement

1  Contentions to add the Comfort Curve and AUTODISC products as accused products (Docket No.
2  94), which this Court granted on July 31, 2006 (Docket No. 191).

3  Based on the more than seven year delay between Abbott's undisputed actual or constructive
4  knowledge in late 1998 of the alleged infringement of the '551 patent by the Comfort Curve and
5  AUTODISC products, and Abbott's assertion of infringement against these two products on May 15,
6  2006, Roche and Bayer now seek summary judgment granting their laches defenses.

## LEGAL STANDARD

### A. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

### B. Laches

To invoke the laches defense in a patent infringement action, an accused infringer has the

burden to prove two factors: that (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant", and that (2) "the delay operated to the prejudice or injury of the defendant." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc). The application of the equitable defense of laches is committed to the sound discretion of the district court. *Id.* A court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties. *Id.*

"*Prima facie*, the underlying critical factors of laches are presumed upon proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity." *Id.* at 1035-36. Where the presumption applies, the two facts of unreasonable delay and material prejudice "*must* be inferred, absent rebuttal evidence." *Id.* at 1037 (emphasis in original). The presumption of laches shifts the burden of production (but not the burden of persuasion) to the plaintiff to offer proof either that the patentee's delay was reasonable, or that the defendant suffered no prejudice, or both. *Id.* at 1038. The plaintiff must provide evidence sufficient to put the existence of either the presumed fact of unreasonable delay, or the presumed fact of prejudice, into genuine dispute – i.e., sufficient to support a finding of the nonexistence of the presumed fact. *Id.* at 1037. If the plaintiff provides such evidence, raising a genuine issue respecting either unreasonable delay or prejudice, the presumption disappears entirely as to both factors and the accused infringer is put to its proof on the entirety of the laches defense. *Id.* at 1038; *see also Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992) ("the presumption of laches which arises after a defendant proves a six-year delay is a 'double-bursting bubble' which the plaintiff punctures with introduction of evidence sufficient to raise a genuine dispute as to *either* delay or prejudice.") (emphasis in original).

Ultimately, the establishment of the factors of undue delay and prejudice, whether by actual proof or by the presumption, does not mandate recognition of a laches defense in every case. *Aukerman,* 960 F.2d at 1036. Laches remains an equitable judgment of the trial court in light of all the circumstances. *Id.* If the decision on laches is made on summary judgment, there must be no

3

1  genuine issues of material fact, the burden of proof of an issue must be correctly allocated, and all
2  pertinent factors must be considered. *Id.* at 1039.

## ANALYSIS

**A.     The Presumption Of Laches Applies For Both Roche And Bayer.**

The '551 patent issued on October 13, 1998. Abbott does not contest the extensive evidence submitted by Roche and Bayer establishing that, after the patent issued, more than six years transpired between when Abbott knew or should have known of these defendants' allegedly infringing activities, and when Abbott first asserted infringement under the '551 patent against Roche's Comfort Curve test strips and Bayer's AUTODISC product.

With respect to Roche, the undisputed evidence shows that Abbott had studied the Comfort Curve strips and had actual or constructive knowledge of the strip's alleged infringement of the '551 patent by late 1998. (Alva Depo. at 246, 250, 256, 279-80, 286-91, Tyler Decl., Exh. B.) Abbott did not move to amend its Preliminary Infringement Contentions to add the Comfort Curve test strips to the list of products that allegedly infringed the '551 patent until May 15, 2006, more than seven years later. In its opposition, Abbott does not contest that this period of delay is sufficient to trigger the presumption of laches.

With respect to Bayer, the undisputed evidence shows that Abbott had studied the AUTODISC product and had actual or constructive knowledge of the product's alleged infringement of the '551 patent by late 1998. (Alva Depo. at 242-245, 249-50, 252, Bartlett Decl., Exh. 14.) Abbott did not move to amend its Preliminary Infringement Contentions to add the AUTODISC product to the list of products that allegedly infringed the '551 patent until May 15, 2006, more than seven years later. In its opposition, Abbott does not contest that this period of delay is sufficient to trigger the presumption of laches.

The Court therefore applies a presumption of laches with respect to both Roche and Bayer. Accordingly, unreasonable delay and material prejudice "*must* be inferred, absent rebuttal evidence." *Aukerman,* 960 F.2d at 1037 (emphasis in original). The burden of coming forward with "evidence sufficient to support a finding of the nonexistence of a presumed fact" is shifted to Abbott. *Id.* at 1037. Abbott can meet its burden of production, and "burst" the presumption bubble, by introducing

4

"evidence sufficient to raise a genuine dispute as to *either* delay or prejudice." *Hemstreet*, 972 F.2d at 1293.

### B.     Reasonableness Of Abbott's Delay.

To overcome the presumed fact of unreasonable delay, Abbott "bears the burden only of coming forward with sufficient evidence to raise a genuine factual issue respecting the reasonableness of its conduct." *Aukerman,* 960 F.2d at 1039.  The Court, carefully considering all of the evidence submitted by Abbott, finds that Abbott has failed to meet this burden.

#### 1.     Delay In Asserting Infringement Against Roche's Comfort Curve Strips.

Abbott asserts several justifications for its delay in asserting infringement against Roche's Comfort Curve products.  In particular, Abbott contends that its delay is excused because: (1) Abbott was engaged in the *LifeScan* litigation, of which Roche was aware, from October 1998 through September 2003, (2) Abbott had ongoing licensing negotiations with Becton, Dickinson and Company ("BD") beginning April 2003, and (3) Abbott engaged in litigation against BD starting in 2004, with the '551 patent added to that litigation in March 2005.  The Court addresses each of these rationales in turn.

First, Abbott contends that its litigation against LifeScan, commenced the day the '551 patent issued in 1998 and lasting through settlement in 2003, excuses its delay in waiting until 2006 to asserting infringement against Roche's Comfort Curve products.  However, the evidence submitted by Abbott on this point is limited to the fact that the lawsuit existed during this period (Hutcheson Decl., ¶¶ 2-3, Exh. B), and that Roche was aware of and monitored the lawsuit for several years. (Young Depo. at 23-29, 70-73, Hutcheson Decl., Exh. G.).  Abbott contends that this evidence creates a genuine issue of material fact as to whether its delay is excusable and therefore overcomes the presumption.

The Court disagrees.  Abbott's limited submission of evidence concerning the *LifeScan* litigation is insufficient to raise a genuine factual issue respecting the reasonableness of its delay. Of particular importance, Abbott provides no evidence whatsoever indicating that its delay in bringing claims against Roche's Comfort Curve strips was even attributable to the *LifeScan* litigation. Abbott also provides no evidence indicating that the mere existence of the lawsuit gave Roche

5

reason to believe it would be sued next, and no evidence that Roche in fact did believe it would be sued next. The Court cannot conclude, merely from the existence of the lawsuit and Roche's awareness of the lawsuit, that Abbott's delay was justified or that Roche should have maintained a reasonable apprehension that its Comfort Curve products would be sued.

Abbott's evidentiary showing concerning the *LifeScan* case fall particularly short because it is undisputed that, despite the fact that Abbott and Roche were engaged in cross-licensing discussions regarding various patents 1998 through 2006, including patents relating to diabetes care and blood glucose monitoring (Young Depo. at 33-34, 91, Tyler Decl., Exh. HH; Tyler Decl., Exh. JJ), Abbott never raised the '551 patent or *LifeScan* litigation, nor conveyed notice of an intent to sue to Roche. Against the backdrop of continuous licensing negotiations, Abbott's undisputed failure to provide any form of notice to Roche about its reasons for delay renders the mere pendency of the *LifeScan* lawsuit an insufficient excuse. While Abbott is correct that *Aukerman* teaches that there is no rigid requirement in judging a laches defense that a patentee give notice of the reasons for its delay (*Aukerman*, 960 F.2d at 1039), it is also true that "the equities may or may not require that the plaintiff communicate its reasons for delay to the defendant" (*id.* at 1033). In particular, as is the case here, "where there is prior contact, the overall equities may require appropriate notice. . ." *Id.* at 1039.

Abbott's position attaches talismanic importance to the fact that it engaged in other litigation concerning the '551 patent, citing *Aukerman* and *Hemstreet*. But though *Aukerman* recognizes that "other litigation" has been recognized as a justification for delay "in some instances" (960 F.2d at 1033), there must be an plausible explanation based upon evidence for why the other litigation makes the delay reasonable. The evidence submitted by Abbott here fails to establish the kinds of litigation-related justifications that excused delay elsewhere. *See, e.g., Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 878 (Fed. Cir. 1991) (correspondence between parties during delay acknowledged a continuing conflict); *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992) (presumption overcome by evidence that delay was attributable both to litigation and re-examination proceeding, and that individual investor alerted

6

industry to sequential license-or-litigate strategy).[1]

Second, Abbott contends that licensing discussions with Becton, Dickinson and Company ("BD") beginning in April 2003 excuse its delay in asserting infringement against Comfort Care strips. However, the very evidence submitted by Abbott shows that these licensing discussions were with an unrelated party regarding an unrelated patent. (Hutcheson Decl., ¶¶ 5, 7 & Exh. E). While progressing efforts to resolve a patent dispute through negotiation can justify delay in bringing suit regarding that dispute, unrelated negotiations with unrelated parties are not a sufficient basis for justifying the delay shown here. *Cf. Griese v. Pierre Chem Co.*, 29 F. Supp. 2d 33, 40-41 (D. Mass. 1998) (rejecting notion that "negotiations with parties other than the defendants excuse delay in bringing suit against the defendants."). Moreover, Abbott has introduced no evidence into the record explaining why unrelated negotiations with third parties prevented it from filing suit against Roche.

Third, Abbott contends that litigation between Abbott and BD, which commenced in May 2004 but did not add the '551 patent until March 2005, excuses the delay. Once again, however, Abbott's evidence on this point is limited to the fact that the litigation existed (Hutcheson Decl., ¶ 7) and the fact that Roche became aware of it shortly after August 2005 (Young Depo. at 31, Hutcheson Decl., Exh. G.) This evidence fails to overcome the presumption for the same reasons discussed in connection with the *Lifescan* litigation above. Moreover, because the '551 patent was not added to the litigation between Abbott and BD until March 2005, more than six years after the laches period began to run in 1998, this lawsuit cannot serve as an excuse for the six-year period that triggers the laches presumption.

The Court is unable to draw any reasonable inferences from the evidence submitted by Abbott that would permit it to conclude that the delay was justified. This is particularly true when it is undisputed that Abbott waited well into this litigation before seeking to assert infringement against the Comfort Curve test strips, and had no intention of asserting infringement against the

---

[1] Two pre-*Aukerman* cases cited by Abbott at oral argument, *Maxon Premix Burner Co. v. Eclipse Fuel Eng'g Co.*, 471 F.2d 308 (7th Cir. 1972) and *Armstrong v. Motorola, Inc.*, 374 F.2d 764 (7th Cir. 1967), do not point to a different result. *Maxon* does not stand for a bright line rule as Abbott suggests, and is distinguishable its facts. 471 F.2d at 313. *Armstrong* is inapposite as it considered only an estoppel defense; the laches defense rejected by the trial court was not appealed. 374 F.2d at 768.

7

1 Comfort Curve test strips when it first filed suit.[2] The Court finds that Abbott has not produced
2 sufficient evidence to "pierce the bubble" of the presumption of unreasonable delay with respect to
3 Roche.

**2.     Delay In Asserting Infringement Against Bayers's AUTODISC Product.**

Abbott asserts several justifications for its delay in asserting infringement against Bayer's AUTODISC products. In particular, Abbott contends that its delay is excused because: (1) Abbott was engaged in the *LifeScan* litigation, of which Bayer was aware, from October 1998 through September 2003, (2) Abbott had ongoing licensing negotiations with Becton, Dickinson and Company ("BD") beginning April 2003, (3) Abbott engaged in litigation against BD starting in 2004, with the '551 patent added to that litigation in March 2005; and (4) Abbott and Bayer were engaged in negotiations, and then litigation, over various patents and technologies from 1999 through the end of 2005.

The first three proffered excuses are insufficient for the same reasons discussed above in connection with Roche. As with Roche, the evidence submitted by Abbott regarding the *LifeScan* litigation is limited to the fact that the lawsuit existed during this period (Hutcheson Decl., ¶¶ 3-4, Exhs. B & C), and that Bayer was aware of and monitored the lawsuit for several years. (Lorch Depo. at 102-03, Hutcheson Decl., Exh. G). Abbott provides no evidence whatsoever indicating that its delay in bringing claims against Bayer's AUTODISC product was connected to the *LifeScan* litigation, or that the mere existence of the lawsuit gave Bayer reason to believe it would be sued next. Abbott's limited submission of evidence concerning the *LifeScan* litigation and its negotiations with and litigation against BD are insufficient to raise a genuine factual issue respecting the reasonableness of its delay.

Abbott proffers the additional justification that Abbott and Bayer were engaged in a series of negotiations, and then litigation, regarding the cross-licensing of Abbott's and Bayer's patents related to prostate testing technology. (Blackwood Depo. at 20, 23, 69-70, 73-74, 83, Hutcheson

---

[2] In its July 2006 motion papers seeking leave to amend its Preliminary Infringement Contentions to add the Comfort Curve and AUTODISC products, Abbott argued that it "did not originally intend to add the newly accused products in the present suit and had not studied infringement by those products prior to bringing suit; otherwise, Abbott would have included the newly accused products in its Preliminary Infringement Contentions." (Docket No. 144-1 at 9:10-13.)

8

Decl., Exh. H.) But the testimony cited by Abbott on this point leaves undisputed the fact that these negotiations concerned a different technology. Abbott offers no explanation – let alone evidence meeting their burden of production – explaining why discussions and litigation with Bayer regarding different patents and different technology excuse the delay in asserting the '551 patent. *See ABB Robotics v. GMFanuc Robotics Corp.*, 828 F. Supp. 1382, 1392 (E.D.Wis. 1993) (negotiations with accused infringer over different technology did not overcome presumption of unreasonable delay); *Arctic Cat, Inc.*, 362 F. Supp. 2d at 1121 (pending trade secret dispute with accused infringer did not overcome presumption of unreasonable delay).[3] Moreover, Abbott does not dispute that the sole time the '551 patent arose during these negotiations was at a November 1999 meeting during which Abbott asserted that Bayer's products infringed a claim of that patent and needed a license. (Bartlett Decl, Ex. 5 at ¶¶ 2-8.) Abbott offers no evidence or rationale explaining the more than six year delay that ensued between November 1999 and May 2006 when it first asserted infringement in litigation against the AUTODISC product.

The Court is unable to draw any reasonable inferences from the evidence submitted by Abbott that would permit it to conclude that the delay was justified, particularly when it is undisputed that Abbott waited well into this litigation before seeking to assert infringement against the AUTODISC product and and had no intention of asserting infringement against the AUTODISC test strips when it first filed suit.[4] The Court finds that Abbott has not produced sufficient evidence to "pierce the bubble" of the presumption of unreasonable delay with respect to Bayer.

### C. Material Prejudice.

Material prejudice "may be either economic or evidentiary." *Aukerman*, 960 F.2d at 1033. A showing of <u>either</u> evidentiary or economic prejudice constitutes material prejudice. *Id.* As with the element of unreasonable delay, material prejudice is presumed and Abbott bears the burden of production.

---

[3] Abbott cites *Cedarapids, Inc. v. CMI Corp.*, 2000 U.S. Dist. LEXIS 22743 (N.D. Iowa 2000) for the proposition that other litigation with Bayer excuses any delay in filing suit. In *Cedarapids*, however, the patentee offered a plausible explanation as to why it had directed its resources first to the other litigation, and why it had reasonably decided to wait out an administrative stay during which it could not bring patent infringement counterclaims. *Id.* at *25-27. Abbott has not introduced evidence making any similar showing here.

[4] *See* footnote 2, *supra*.

9

### 1. Economic Prejudice.

"Economic prejudice may arise where a defendant will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Aukerman*, 960 F.2d at 1033. Expenditures and investments must have a "nexus" to the patentee's delay in filing suit. *Hemstreet*, 972 F.2d at 1294. "It is not enough that the alleged infringer changed his position – i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." *Id.*[5] However, "there is a difference between prejudice that results from delay and prejudice that is due to reliance upon delay." *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 n.1 (Fed. Cir. 1992). Defendants "need not show that they relied on [the patentee's] delay to establish laches. However, they must show that the prejudice they suffered resulted from the delay." *Id.*

Because of the presumption, Abbott bears the burden of production and must come forward with evidence sufficient to raise a genuine factual issue as to whether economic prejudice exists. Roche and Bayer both submit extensive evidence documenting the investments and expenditures in their products that took place during the laches period, and Abbott does not contest these undisputed facts. Instead, Abbott solely contests whether these investments and expenditures would have been prevented by an earlier suit; i.e., Abbott contests whether the required "nexus" exists between the expenditures and the delay.

#### a. Economic prejudice as to Roche.

Abbott presents four pieces of evidence designed to prove that no nexus exists between the delay in filing suit and Roche's investments and expenditures. First, Abbott submits testimony from Roche's Chief Intellectual Property Counsel. Drawing all reasonable inferences in favor of the non-moving party (Abbott), this somewhat ambiguous testimony can be read to state that the only basis for Roche's continuing investment in Comfort Curve strips was an undisclosed oral opinion of counsel. (Young Depo at 87, Hutcheson Decl., Exh. G.) Second, Abbott submits testimony from Roche's 30(b)(6) witness on the issue on economic prejudice, in which the witness testified that he

---

[5] The Federal Circuit has observed that "economic prejudice is not a simple concept but rather is likely to be a slippery issue to resolve." *Aukerman*, 960 F.2d at 1033.

10

1  was not aware of any documents indicating that Roche was unlikely to be sued by Abbott for
2  infringement of the '551 patent, or any documents indicating that Roche's investments were made
3  because of some conduct by Abbott.  (Hubbard Depo. at 43 & 47, Hutcheson Decl., Exh. H.)   Third,
4  Abbott submits evidence that Roche, after being sued, did not change its business plans for either the
5  Aviva or Comfort Curve accused products, continued to sell those products, and continued to invest
6  in those products.  (Hubbard Depo. at 39, 43, 66-67, 79, Hutcheson Decl., Exh. H; McKee Depo. at
7  23-25, Hutcheson Decl., Exh. I.)  Fourth, Abbott submits evidence that Roche never considered
8  pulling a product off the market, or halting introduction of a product, due to the '551 patent.  (Young
9  Depo. at 58:, Hutcheson Decl., Exh. G.)  Based on this evidence, Abbott asks the Court to infer that
10 the requisite "nexus" does not exist because Roche would have made same investments and pursued
11 the same business plan even if Abbott had asserted infringement earlier.

12      The Court finds that, drawing all reasonable inferences from the evidence submitted by
13 Abbott, Abbott has provided sufficient evidence to support a finding of the nonexistence of the
14 required "nexus" for economic prejudice.  The evidence provided by Abbott is indirect and not
15 nearly as compelling as Abbott advocates.[6]  Nonetheless, a reasonable factfinder, drawing all
16 reasonable inferences in favor of Abbott, could potentially conclude from the evidence submitted by
17 Abbott that Roche would not have altered its investments or expenditures even if sued earlier.[7] *Cf.*
18 *James River Corp. of Virginia v. Hallmark Cards, Inc.*, 915 F.Supp. 968, 978 (E.D.Wis. 1996) ("An
19 infringer's continuation of infringing activity is probative of a lack of prejudice.  Where no evidence
20 shows the infringer stopped selling the allegedly infringing product even after the patentee filed the

---

[6] In particular, Abbott places undue emphasis on the argument that its evidence shows that Roche did not rely on the delay in filing suit as a basis for making its continued investments and sales. Reliance on the delay, however, is not required to show economic prejudice. *Meyers*, 974 F.2d at 1308 n.1; *cf. Aukerman*, 960 F.2d at 1034 (contrasting laches and equitable estoppel principles).

[7] Roche and Bayer invite the Court to rely on language in *Odetics, Inc. v. Storage Tech Corp.*, 919 F. Supp. 911 (Ed. Va. 1996), *vacated in part on other grounds,* 116 F.3d 1497 (Fed. Cir. 1997), indicating that the accused infringer need only "show that the investment was a natural consequence of the passage of time" to establish the nexus. *Id.* at 919. However, this somewhat loosely-worded passage, if taken out of context, does not entirely square either with Federal Circuit precedent nor other discussion in *Odetics* itself. As *Odetics* recognized, the inquiry properly focues on whether the investment was causally connected to the delay. "[W]here it appears that the accused infringer would have invested in the accused product or otherwise changed his financial position even if suit had not been delayed . . .the accused infringer may not cry laches because the change in economic position did not result from the delay." *Id.* at 919 (*citing Hemstreet*, 972 F.2d at 1294).

11

1  complaint, a court may draw the inference that the infringer would have continued to sell the
2  infringing product even if the patentee had brought suit earlier.")  Accordingly, Abbott has
3  succeeded at overcoming the presumption of economic prejudice with respect to Roche.

4        With the presumption overcome as to this issue, this Court considers whether the "nexus"
5  issue is nonetheless ripe for resolution by summary judgment.  After reviewing the countervailing
6  evidence submitted by Roche on this issue[8], the Court concludes that it the issue is not amenable to
7  summary judgment.  Based on the evidence submitted, the parties are asking the Court to draw
8  differing reasoanble inferences from the evidence as to whether Roche would have altered its
9  investments or expenditures if sued earlier.  Because the Court is obligated at the summary judgment
10  stage to draw all reasonable inferences in favor of Abbott, the issue of economic prejudice cannot be
11  resolved short of trial.

12                  **b.**        **Economic prejudice as to Bayer.**

13        With respect to Roche, Abbott presents four pieces of evidence designed to prove that no
14  nexus exists between the investments and expenditures and the delay in filing suit.  First, Abbott
15  introduces testimony from Bayer's senior marketing manager that she had never seen documents
16  suggesting Bayer continued to invest based on any assumption that Bayer did not infringe Abbott's
17  patents.  (O'Neill Depo. at 193-196, Hutcheson Decl., Exh. I.)  Second, Abbott presents evidence
18  that Bayer continued marketing and promoting the AUDODISC product pursuant to its pre-existing
19  business plans even after Abbott field this lawsuit in August 2005.  (Lorch Depo. at 48-49, 58;
20  Hutcheson Decl, Exh. G).  Third, Abbott submits evidence (which this Court views as largely
21  irrelevant) that Bayer's sales of the AUTODISC products did not always meet forecasted
22  projections.  (Lorch Depo. at 109-110, Hutcheson Decl., Exh. G.)  Fourth, Abbott submits evidence
23  that Bayer never considered pulling a blood glucose product off the market or failing to introduce a
24  product to the market due to Abbott's patents.  (O'Neill Depo. at 111; Hutcheson Decl., Exh. I;
25  Blackwood Depo. at 55-56, Hutcheson Decl., Exh. H.)  Based on this evidence, Abbott asks the
26  Court to infer that the requisite "nexus" does not exist because Bayer would have made same

---

[8] The evidence submitted by Roche on the nexus issue includes: (1) increasing market share and sales, (2) linkage between Roche's belief in noninfringement and the *LifeScan* case, a European counterpart patent, and Abbott's failure to sue, and (3) Roche's procedures of resolving potential patent liability through licensing efforts.

12

1 investments and pursued the same business plan even if Abbott had asserted infringement earlier.

2 As with Roche, the Court finds that, drawing all reasonable inferences from the evidence
3 submitted by Abbott, Abbott has provided sufficient evidence to support a finding of the
4 nonexistence of the required "nexus" for economic prejudice. A reasonable factfinder, drawing all
5 reasonable inferences in favor of Abbott, could potentially conclude from the evidence submitted by
6 Abbott that Bayer would not have altered its investments or expenditures even if sued earlier.
7 Accordingly, Abbott has therefore succeeded at "bursting the bubble" and overcoming the
8 presumption of economic prejudice with respect to Bayer. After the considering the evidence
9 submitted by Bayer on the "nexus" issue[9], the Court concludes that it is not amenable to summary
10 judgment. Once again, the parties are asking the Court to draw differing reasonable inferences from
11 the evidence as to whether Bayer would have altered its investments or expenditures if sued earlier.

12 Abbott has met its burden of production with respect to economic prejudice. However, this
13 is not fatal to the instant motions as the Court must still analyze whether Abbott has met its burden
14 of production with respect to evidentiary prejudice.[10]

### 2. Evidentiary Prejudice.

Evidentiary prejudice may arise where the "defendant's ability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events" undermines the Court's ability to judge facts. *Aukerman*, 960 F.2d at 1033.

As an initial matter, Abbott cites to Federal Rule of Civil Procedure 37(d) for the proposition that neither Roche nor Bayer may present evidence on the point of evidentiary prejudice because they purportedly refused to put forth a Rule 30(b)(6) witnesses on the subject of evidentiary prejudice. The Court construes this as a request by Abbott that the Court enter an evidentiary sanction under Rule 37(d), which permits such sanction "if...a person designated under Rule

---

[9] The evidence submitted by Bayer on the nexus issue includes: (1) increasing investment and sales, (2) the existence of noninfringing alternatives, and (3) Bayer's procedures of resolving potential patent liability through licensing efforts.

[10] *See ABB Robotics, Inc. v. Robotics Corp.*, 828 F. Supp. 1386 (E.D.Wis. 1993) (granting summary judgment of laches where patentee overcame presumption of evidentiary prejudice but did not overcome presumptions of unreasonable delay or economic prejudice).

13

1  30(b)(6)...fails...to appear before the officer who is to take the deposition, after being served with a
2  proper notice." The record here indicates, however, that neither Roche and Bayer designated a
3  30(b)(6) witness who then failed to appear; instead, Roche and Bayer both refused to designate
4  30(b)(6) witnesses on the topic of evidentiary prejudice but produced 30(b)(6) witnesses on other
5  topics. (Hubbard Depo. at 14, Hutcheson Decl., Exh. H; O'Neil Depo at 35, Hutcheson Decl. Exh.
6  I.) Accordingly, it is not Rule 37(d) that governs here, but Rule 37(a)(2), which covers situations
7  where "a corporation or other entity fails to make a designation under Rule 30(b)(6)." Because Rule
8  37(a)(2) does not authorize evidentiary sanctions unless there is a violation of a court order secured
9  through a motion to compel, the Court declines to impose the evidentiary sanction sought by Abbott.

10  In any event, there is no need to reach the evidence submitted by Roche and Bayer, because
11  Abbott has failed to meet its burden of production by coming forth with sufficient evidence to negate
12  the presumed fact of evidentiary prejudice. *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed.
13  Cir. 1996) (under the presumption, "defendants could have remained utterly mute on the issue of
14  prejudice and nonetheless prevailed"). With respect to Roche, the only evidence submitted by
15  Abbott with its opposition on the topic of evidentiary prejudice is: (1) a conclusory sentence in its
16  counsel's declaration that Roche's invalidity contentions with respect to the '551 Patent are "based
17  primarily on printed publications" (Hutcheson Decl. ¶ 8); and (2) deposition testimony indicating
18  that one specific witness, the project leader that was in charge of Comfort Curve, remains at Roche.
19  (Hubbard Depo at 22-23, Hutcheson Decl., Exh. H; Young Depo. at 18, Hutcheson Decl., Exh. G.)
20  With respect to Bayer, Abbott submits even less evidence with its opposition, providing only the
21  statement that Bayer's invalidity defenses are "based primarily on printed publications" in counsel's
22  declaration. (Hutcheson Decl. ¶ 9.) Otherwise, Abbott's opposition presents only attorney argument
23  that Roche and Bayer have the same evidence available to them today as it would have if the case
24  had been filed in 1998, and that Roche and Bayer have presented no evidence of evidentiary
25  prejudice.

26  This evidentiary showing in Abbott's opposition is insufficient to overcome the presumption.
27  Evidence that a single witness remains accessible to Roche, even if that witness is important to
28  infringement issues, falls far short of establishing that Roche's ability to put on a "full and fair

14

defense" has not been compromised. Abbott does not muster any evidence regarding the availability of witnesses to Bayer. Moreover, Abbott's evidence that Roche's and Bayer's invalidity contentions "primarily" rely on printed publications, even if accepted, leaves entirely unaddressed whether there has been a loss of records or reliable witness testimony in connection with numerous other issues in the case. For several such issues, including inequitable conduct and inventorship issues, much of the the most relevant evidence would presumably be under Abbott's control, yet Abbott presents no evidence that adequately addresses whether Roche's and Bayer's ability to present defenses relating to these issues has been preserved.

At oral argument on March 27, Abbott requested for the first time to supplement the record with a declaration signed by Dr. Hill on March 23 addressing allegations raised by Roche and Bayer in their reply briefs regarding the loss of documents, and loss of reliable testimony, connected to Dr. Hill. Though Abbott was on notice before it filed its opposition that at least Roche regarded the testimony of Dr. Hill as affirmative proof that evidentiary prejudice existed (Tyler Decl., Exh. NN at 2), the Court will nonetheless admit and consider this declaration, to provide Abbott an opportunity to rebut the specific passages from Dr. Hill's testimony first set forth in detail by Roche and Bayer in their reply briefs.[11]

Even taking this supplemental declaration into account, however, the Court finds that Abbott has failed to introduce evidence sufficient to support a finding of the nonexistence of the presumed fact of evidentiary prejudice. At best, the supplemental declaration of Dr. Hill partly neutralizes some of the specific proof of document destruction that Roche and Bayer had introduced into the record in connection with their reply briefs.[12] However, the supplemental declaration does not

---

[11] The Court therefore OVERRULES Roche's and Bayer's objection that the supplemental March 23, 2007 declaration of Dr. Hill is untimely.

[12] As Roche and Bayer point out, Dr. Hill testified at deposition that in 2004, when he downsized his office at Oxford due to retirement status, he threw out files that contained "every research report written by the people working for MediSense", specifically including research related to the '551 patent. (Hill Depo. at 82, 215-216, Tyler Decl., Exh. OO.) Dr. Hill testified that the volume of documents that were discarded consisted of eight black garbage bags, each about four feet high and a meter wide. (*Id.* at 84.) Moreover, it appears from Dr. Hill's testimony that some of the documents discarded included the only copies of lab notebooks that Oxford maintained. (*Id.* at 84-85.) Dr. Hill's supplemental March 23, 2007 declaration now indicates that "[w]ith regard to any materials related to the '551 Patent that may have been discarded in 2004," he had previously provided the originals or copies of these materials for production in the earlier *LifeScan* litigation to counsel for Abbott. (March 23, 2007 Hill Decl. at ¶ 4.) However, neither Dr. Hill's declaration nor any other evidence

15

1 remedy Abbott's overall failure to establish that the ability of Roche and Bayer to put on a "full and
2 fair defense" is intact.

3 Because Abbott has failed to meet its burden of production, evidentiary prejudice "*must* be
4 inferred" here. *Aukerman*, 960 F.2d at 1037.[13]

### D. Abbott Fails To Establish Unclean Hands.

6 Even where unable to overcome the presumption of laches (as is the case here), a patentee
7 may be able to preclude application of the laches defense if the accused infringer has unclean hands.
8 *Aukerman*, 960 F.2d at 1033. Abbott asserts that Roche's and Bayer's willful infringement
9 constitutes unclean hands sufficient to deny the laches defense.

10 In an effort to prove Roche's willful infringement, Abbott submits evidence that although
11 Roche was aware of the '551 patent, has sophisticated intellectual property procedures, and had
12 outside counsel monitoring the the *LifeScan* litigation, Roche never sought a written opinion of
13 outside counsel, but instead merely obtained a oral opinion of in-house counsel regarding whether
14 the Comfort Curve products infringe the '551 patent, which it has refused to disclose on attorney-
15 client privilege grounds. (Young Depo. at 83-85, Hutcheson Decl., Exh. G.)

16 Similarly, in an effort to prove Bayer's willful infringement, Abbott submits evidence that
17 although Bayer was aware of the '551 patent and the LifeScan litigation in 1998, has sophisticated
18 intellectual property procedures, and consulted in-house counsel about the patent in 1998 through
19 2000, Bayer did not obtain a written opinion of outside counsel on infringement until 2003, which it
20 has refused to disclose on attorney-client privilege grounds. (Hutcheson Decl., Exh. F; Blackwood
21 Depo. at 21-22, Hutcheson Decl., Exh. H.)

22 The Court finds that Abbott's attempt to prove wilfulness with this evidence cannot be

---

submitted by Abbott indicates that such documents still exist or whether they have been provided to Defendants. Dr. Hill's declaration also indicates that he provided testimony in the *LifeScan* litigation "related to research that led to the inventions disclosed and claimed in the '551 Patent" (*id.* at ¶ 5) but does not address the memory loss issues raised by Roche and Bayer.

[13] As noted above, because Abbott has failed to meet its burden of production, the Court need not reach the question of whether the affirmative evidence submitted by Roche and Bayer that Dr. Hill's memory regarding important testimony has faded (Hill Depo. at 60, 119, Tyler Decl. Exh. OO) would be sufficient to establish evidentiary prejudice in the absence of the presumption. The Court has reviewed this evidence as part of its equitable weighing of the factors, but accords it relatively little importance given that the record does not establish that Dr. Hill's memory of these events were still intact at the <u>start</u> of the laches period.

16

squared with controlling precedent. The Federal Circuit has decisively held, overruling all contrary precedent, that for purposes of willful infringement "no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1341 (Fed. Cir. 2004) (en banc). Abbott, by premising its allegations of willful infringement on the fact that Roche and Bayer did not obtain and/or produce exculpatory opinions of counsel, asks this Court to draw exactly the sort of inference barred by *Knorr-Bremse*.[14]  The Court declines to do so.

Accordingly, Abbott has failed to meet its burden of proof with respect to its allegation of unclean hands.

### E. Weighing Of Factors In Exercise Of This Court's Discretion.

After taking into account "all pertinent facts and equities" (*Aukerman*, 960 F.2d at 1034) based on undisputed facts, including the length of the delay (more than seven years) after Abbott had actual or constructive knowledge of the alleged infringement, the presumed and unrebutted fact of unreasonable delay, the lack of any plausible explanation offered by Abbott as to how its involvement in litigation or negotiations justified that delay, the fact that Abbott waited well into this litigation before seeking to assert infringement against the products at issue, the fact that Abbott had no intention of asserting infringement against the products at issue when it first filed suit, and the presumed and unrebutted fact of evidentiary prejudice, the Court concludes that Abbott dealt unfairly with Bayer and Roche by not promptly asserting infringement against the Comfort Curve and AUTODISC products. On that basis, the Court exercises its equitable discretion by granting

---

[14] Moreover, mere willful infringement, without something "particularly egregious" such as proof of calculated plagiarism, is generally considered insufficient to preclude application of the laches defense. *Aukerman,* 960 F.2d at 1033 ("particularly egregious conduct" can change equities in plaintiff's favor and defeat a laches defense); *see also Odetics, Inc. v. Storage Tech, Inc.*, 14 F. Supp. 2d 800, 806 (E.D.Va 1998), *aff'd*, 185 F.3d 1259 (Fed. Cir. 1999). Even the cases cited by Abbott suggest that only "egregious conduct", which Abbott has not proved, might bar application of equitable defense of laches. *See Bott v. Four Star Corp.*, 807 F.2d 1567, 1576 (Fed. Cir. 1986) (party accelerated its infringing sales after adverse decision on liability); *F & G Scrolling Mouse LLC v. IBM Corp.*, 190 F.R.D. 385, 393 (M.D.N.C. 1999) ("proof of sufficiently egregious willful infringement could prevent assertion of laches); *Haworth, Inc. v. Herman Miller, Inc.*, 1993 WL 761974 at *4 (W.D. Mich. 1993) (conduct that is "egregious enough" could prevent a laches defense).

Roche's and Bayer's motions.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

(1)  The Court **GRANTS** Roche's motion for partial summary judgment of laches. Abbott's claims for damages prior to May 15, 2006 for Roche's Comfort Curve products are hereby barred.

(2)  The Court **GRANTS** Bayer's' motion for partial summary judgment of laches. Abbott's claims for damages prior to May 15, 2006 for Bayer's AUTODISC products are hereby barred.

**IT IS SO ORDERED.**

Dated:   4/24/2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE