IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBOTT DIABETES CARE INC. ET AL, <br><br> Plaintiff, <br><br> v. <br><br> ROCHE DIAGNOSTICS CORPORATION ET AL, <br><br> Defendant. | No. C05-03117 MJJ <br><br> **ORDER SUSTAINING DEFENDANTS' OBJECTION TO MAGISTRATE'S AUGUST 3, 2007 ORDER AND COMPELLING PRODUCTION OF REDACTED SETTLEMENT AGREEMENT** |

## INTRODUCTION

Before the Court is Defendants' Objection To Magistrate Judge Zimmerman's August 3, 2007 Order Denying Roche's Motion To Compel And Granting Abbott's Motion to Quash. (Docket No. 491.) Pursuant to court order, Abbott submitted a brief responding to Defendants' objections.[1]

Having carefully considered the parties' arguments, the Court **SUSTAINS** Defendants' objection and **ORDERS** Abbott to produce a redacted version of the Abbott/LifeScan settlement agreement, as discussed below.

## FACTUAL BACKGROUND

In September 2005, Roche served a first set of document requests on Abbott. Request No. 3 of those requests sought production, inter alia, of "any settlement agreement" exchanged between Abbott Laboratories and LifeScan Inc. in the patent infringement litigation involving U.S. Patent No. 5,820,551 in the United States District Court for the District of Massachusetts. Abbott's response to the interrogatory did not object to the request to produce the settlement agreement on relevance grounds, but did object on grounds of burden, overbreadth, and "to the extent it seeks

---

[1] Good cause appearing therefor, the Court **GRANTS** Defendant's Motion For Leave To File Notice Of Later Discovered Facts filed on October 19, 2007. (Docket No. 524.)

documents prohibited or limited from disclosure pursuant to any confidentiality agreement between the parties or pursuant to the protective order entered by the Massachusetts District Court. . ." (Froemel Decl., Exh. 2.)

On June 14, 2007, Bayer served a subpoena on LifeScan which also sought production of the settlement agreement.. (Docket No. 455, Exh. A.) LifeScan timely objected on relevance and confidentiality grounds.

On June 29, 2007, Defendants filed a motion to compel production of the Abbott/Lifescan Settlement Agreement. On July 19, 2007, Abbott filed a motion to quash the Bayer subpoena to LifeScan. In both its response to Defendants' motion to compel, and in the brief supporting the motion to quash, Abbott represented that there were no licenses to the '551 patent. (Docket No. 455 at 7:7-8; Docket No. 440 at 7:1-2.)

Magistrate Judge Zimmerman initially entered a tentative ruling granting the motion to compel and denying the motion to quash to the extent it sought to prevent discovery of the settlement agreement. (Docket No. 476.) However, after further briefing and a hearing at which the Magistrate reviewed the settlement agreement *in camera*, the Magistrate issued an August 3, 2007 order which denied the motion to compel and granted the motion to quash. In that order, the Magistrate found that Abbott had waived its relevancy objection by not raising it in a timely fashion. However, the Magistrate also found that LifeScan and Abbott both held a legitimate expectation that the settlement agreement would remain confidential. Based on his *in camera* review of the settlement agreement, the Magistrate ruled that the agreement was not relevant to the parties' claims and defenses because "[c]ontrary to defendants' speculation, the agreement contains no discussion of royalty payments or a licensing arrangement." Ultimately, the Magistrate found that the confidentiality interests of Abbott and LifeScan, and the federal policy of encouraging settlements, outweighed any relevance of the settlement agreement, and ordered that it not be disclosed.

Defendants timely objected to the Magistrate's ruling on August 24, 2007.[2] This Court subsequently ordered Abbott to file a response to Defendants' objections and to submit a copy of the

---

[2] By stipulated order, Defendants' time to object to the August 3, 2007 order was extended until August 24, 2007. (Docket No. 494.)

2

settlement agreement to this Court for *in camera* review. (Docket No. 523.) The Court has determined that Defendants' objections are appropriate for resolution without oral argument.

## LEGAL STANDARD

Magistrate judges' rulings on nondispositive motions may be set aside or modified by the district court only if found to be "clearly erroneous" or "contrary to law." FRCP 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *McKeever v. Block*, 932 F.2d 795, 798-99 (9th Cir.1991).

. The "clearly erroneous" standard applies only to the magistrate judge's findings of fact. A finding of fact is clearly erroneous if the court has a definite and firm conviction that a mistake has been committed. *Burdick v. Commissioner*, 979 F.2d 1369, 1370 (9th Cir.1992). The magistrate judge's legal conclusions are freely reviewable de novo to determine whether they are contrary to law. *See United States v. McConney*, 728 F.2d 1195, 1200-01 (9th Cir.1984).

## ANALYSIS

After carefully considering the contents of the settlement agreement (which was submitted for *in camera* review), the briefing submitted by the parties to the Magistrate, the August 3, 2007 ruling by the Magistrate, and the subsequent briefing provided by the parties, this Court finds that several provisions in the settlement agreement, by altering the legal relationship between Abbott and LifeScan with respect to Lifescan's continued marketing of products after the settlement, are highly relevant to Abbott's claims for lost profits. As a result, the Court concludes that the Magistrate erred in determining that Abbott's and LifeScan's confidentiality interests warranted shielding the entirety of the settlement agreement from discovery.

Abbott seeks lost profits damages for its infringement claim against Defendants. To recover lost profits, a patentee generally must establish that, but for the defendant's infringing sales, it would have made additional sales. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). Proof that there is an "absence of acceptable non-infringing substitutes" is relevant to, and is often a central issue, in assessing such "but for" causation. *Id.* Where there are non-infringing alternatives, a patentee may still be able to recover lost profits based on market share of the reconstructed market, without the defendant's infringing products. *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).

3

Here, the Court is persuaded that the settlement agreement has considerable probative value for a factfinder's determination of whether LifeScan's products constitute acceptable non-infringing substitutes in the relevant market. After reviewing the contents of the settlement agreement, the Court disagrees with Abbott's contention that nothing in the settlement agreement is relevant to the lost profits analysis beyond the already-disclosed fact that a settlement agreement exists. In particular, the Court finds that paragraphs 1.10, 3.2, and 3.3 of the settlement agreement are directly relevant to the factual questions, important to the lost profits analysis, of: (1) whether the settlement altered the legal relationship between Abbott and LifeScan in a manner that explains LifeScan's continued marketing of its products; (2) whether any LifeScan products still marketed constitute "non-infringing" substitutes, and (3) what range or scope of products marketed by LifeScan constitute "non-infringing" substitutes. These paragraphs of the settlement agreement materially alter the legal rights between Abbott and LifeScan in a manner highly relevant to the determination of whether LifeScan's products constitute acceptable "non-infringing" substitutes. The probative value of these portions of the settlement agreement is strong enough to meet even the "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement" that some cases require. *See, e.g., Doe v. Methacton Sch. Dist.*, 164 F.R.D. 175, 1756 (E.D. Pa. 1995); *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 122 F.R.D. 447, 451 (S.D.N.Y. 1988).[3]

The effect that the settlement agreement had on the legal relationship between Abbott and LifeScan is relevant to the analysis of Abbott's lost profits for reasons analogous to those in *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995). In *Pall Corp.*, the Federal Circuit held that an alternative offered by a third party was infringing up to the date the patentee and the third party reached a settlement of the patentee's infringement suit and became noninfringing only the patentee granted immunity as part of the settlement. *See id.* at 1222-23. The *Pall Corp.* court held that after the patentee settled with the third-party, the third-party's presence in the marketplace could not be ignored, and the lost profits award was limited to the share of the infringer's sales that

---

[3] Nothing in the record before the Court suggests that the information contained in these paragraphs of the Agreement is duplicative or cumulative of other discovery that Abbott has provided to Defendants.

4

the patentee would reasonably have made. *See id.* Abbott reads *Pall Corp.* too narrowly when it attempts to distinguish the case by insisting that Abbott has not "licensed" its patent to a competitor. The Court agrees with Defendants that the relevance of the settlement agreement, under *Pall Corp.*, is not dependent on whether the alterations to legal rights are classified as a "license" or whether the settlement agreement sets for a basis for royalty calculations. Rather, the settlement agreement is relevant because it likely helps to explain why the LifeScan product – and which products – can continue to be sold despite Abbott's earlier claims of infringement.

Abbott's repeated representations to Defendants, to the Magistrate, and to this Court that it has not provided any "license" to LifeScan fail to convince this Court that the contents of the settlement agreement are irrelevant to lost profits issues. Such contentions are arguably based on semantics, and fail to account for the fact that paragraphs 1.10, 3.2, and 3.3 of the settlement agreement clearly describe an alteration in the legal relationship between Abbott and LifeScan that is material to whether LifeScan's products are "non-infringing" substitutes. It is evident to the Court, from its review of the settlement agreement, that the provisions of the settlement agreement alter the legal relationship between Abbott and LifeScan in a manner that, in patent parlance, might well be described as some form of a "license."[4] The Court finds that the disputable accuracy of Abbott's representations about the settlement agreement provide an additional and compelling basis for ordering production of the relevant portions of the document.

Federal Rule of Civil Procedure 408, and the pro-settlement policies that motivate that Rule, do not warrant shielding the entire settlement agreement from discovery. Given the relevance of the settlement agreement to lost profits issues, Rule 408 is highly unlikely to bar admission of paragraphs 1.10, 3.2, and 3.3 of the settlement agreement into evidence. Rule 408 prevents admission of compromise negotiations "when offered to prove liability for, invalidity of, or amount

---

[4] *See, e.g., Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1031-32 (Fed. Cir. 1995) ("In its simplest form, a license means only leave to do a thing which the licensor would otherwise have a right to prevent. Such a license grants to the licensee merely a privilege that protects him from a claim of infringement by the owner of the patent monopoly."); *Jim Arnold Corp. v. Hydrotech Systems, Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997)("Licenses are considered as nothing more than a promise by the licensor not to sue the licensee. . ."); *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1345 ((Fed. Cir. 2001)("'a nonexclusive license or 'bare' license [is] a covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention and under which the patent owner reserves the right to grant similar licenses to other entities'").

5

of a claim that was disputed as to validity or amount," but does not bar admission of such negotiations for other permissible purposes.[5]

The Court is cognizant of Abbott's and LifeScan's confidentiality interests in the settlement agreement, as well as the federal policy of encouraging settlements by safeguarding the confidentiality of settlement agreements. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308 (Fed. Cir. 2001); *Butta-Brinkman v. FCA Int'l, Ltd.*, 164 F.R.D. 475, 476-77 (N.D. Ill. 1995)   But the pro-settlement posture of the federal courts does not absolutely shield settlement agreements from disclosure.  In this instance, Abbott's and LifeScan's confidentiality interests must yield to disclosure of at least those portions of the settlement agreement that are directly relevant to lost profits claim.  However, to protect Abbott's and LifeScan's confidentiality interests, the Court will permit redaction of the portions of the settlement agreement that do not have direct relevance to explaining LifeScan's continued marketing of the product after the settlement.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendants' objections to the Magistrate's August 3, 2007 order.  The Court **ORDERS** Abbott, within seven calendar days of entry of this Order, to produce a copy of the Abbott/LifeScan settlement agreement in this matter, under the "Highly Confidential" and attorneys' eyes only procedures of the stipulated protective order.  The copy of the settlement agreement produced by Abbott shall contain the following information in unredacted form: paragraphs 1 (including all of 1.1, 1.2, 1.3, 1.4, 1.5, 1.6, 1.7, 1.8, 1.9, and 1.10), 3 (including 3.1, 3.2, 3.3, 3.4 and 3.5), 6.1, 8.1, 8.6, 8.7, the introductory title and paragraph at the top of the first page, and the signature blocks on the final two pages.  All other portions of the settlement agreement may be redacted in the version produced by Abbott.

**IT IS SO ORDERED.**

Dated: November 19, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

---

[5] In any event, the Court should, and does, reserve admissibility determinations regarding the settlement agreement for another day. The question before the Court today is the discoverability, not the admissibility, of the settlement agreement. The Court finds that, at a minimum, discovery of certain portions of the settlement agreement is reasonably calculated to lead to relevant, admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).