United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERASENSE, INC., | No. C 04-02123 WHA |
| Plaintiff, | Consolidated with |
| v. | No. C 04-03327 WHA |
| BECTON, DICKINSON AND COMPANY, | No. C 04-03732 WHA |
| | No. C 05-03117 WHA |
| Defendant. | |
| AND CONSOLIDATED CASES. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR FINDING OF EXCEPTIONAL CASE** |

**INTRODUCTION**

In this patent infringement action, defendants Bayer Healthcare LLC, Becton Dickinson and Company, and Nova Biomedical move for a finding of an exceptional case and attorney's fees. For the reasons stated below, the motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

The procedural and factual history of this action has been discussed thoroughly in prior orders and will not be repeated here. In brief, Abbott Laboratories filed the first of these actions on May 28, 2004, after BD and Nova filed a declaratory judgment action in Massachusetts for one of the patents in suit. Three subsequent actions were filed. All four concerned four patents owned by Abbott and Thereasense, Inc.: U.S. Patent Nos. 5,628,890, 5,820,551, 6,143,164, and

6,592,745. In the lawsuits, Abbott alleged defendants' blood-glucose test strips infringed one or more of their patents.[1]

In the course of litigation, seven summary judgment motions were filed by three different defendants. One of those defendants eventually settled out of the case. These actions were originally assigned to The Honorable Martin J. Jenkins. Immediately after issuing his final summary judgment order, Judge Jenkins left the federal bench, and all four cases came to the undersigned. In the first summary judgment order, Bayer's motion for summary judgment on its laches defense was granted. The order found that Abbott had inexcusably waited over six years to assert its '551 patent thereby precluding it from collecting any pre-litigation damages. In a later summary judgment order, the '745 patent was invalidated based on Abbott's own PCT publication.

The infringement case on the '551 patent then proceeded to trial. By stipulation, the issues of invalidity and unenforceability were tried to the bench. After a ten-day trial, the Court issued its finding of facts and conclusions of law determining that the '551 patent was both invalid as obvious in light of the prior art and unenforceable because Abbott had engaged in inequitable conduct during its prosecution. With respect to obviousness, a significant item of prior art relied on was a patent assigned to one of Abbott's predecessors that listed several of the same named inventors as the '551 patent. With respect to inequitable conduct, the Court found that Abbott's in-house patent attorney, Lawrence Pope, who had prosecuted the '551 patent and Dr. Gordon Sanghera who was in charge of Abbott's patent portfolio had both engaged in inequitable conduct by knowingly withholding material information from the United States Patent Office. More specifically, Dr. Sanghera and Attorney Pope intentionally chose to conceal submissions made to the European Patent Office that were in direct conflict with submissions made to the USPTO. As the findings of fact and conclusions of law stated:

> The balance is decidedly against Abbott. If concealment of extrinsic information as close to the heart of the prosecution as was involved here is allowed to pass, then we would in effect be issuing licenses to deceive patent examiners in virtually all cases.

---

[1] Therasense is a wholly-owned subsidiary of Abbott Laboratories, and the exclusive owner of two of the other patents in suit.

2

The misleading submissions made to the USPTO were the sole reason the examiner allowed the patent to issue after being in prosecution for well over a decade.[2]  The reasons given by Dr. Sanghera and Attorney Pope for their failure to disclose the relevant information were "disingenuous" and "not plausible," as the prior order held.

Defendants now move for attorney's fees and costs for all claims brought by Abbott for all patents asserted.  This order will address the '551 patent separately from the others at issue.

## ANALYSIS

Pursuant to 35 U.S.C. 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  The determination of whether a case is exceptional and, thus, eligible for an award of attorney's fees is a two-step process.  The district court must first determine whether the case is exceptional, a question of fact reviewed for clear error.  If the case is exceptional, then the district court must then decide whether an award is appropriate.  The latter determination is reviewed for abuse of discretion.  *Cybor Corp. v. Fas Techs.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc).

The party seeking the award of fees must establish that the case is exceptional by clear and convincing evidence.  A case may be exceptional where there has been wrongful conduct such as willful infringement; fraud or inequitable conduct in procuring the patent; litigation misconduct; vexatious or unjustified or otherwise bad faith pursuit of objectively baseless claims; violations of FRCP 11; or similarly unprofessional behavior.  *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).

### 1. THE '551 PATENT.

That Abbott lost the '551 trial in no way means the case was exceptional.  Rather, the ground showcased by defendants to justify an award of fees is the inequitable conduct engaged in by Abbott.  Although inequitable conduct may, by itself, justify a finding of an exceptional case, "there is no per se rule of exceptionality in cases involving inequitable conduct."  *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1358 (Fed. Cir. 2008).  Here, however, a finding of an

---

[2] Notably, Abbott filed an infringement suit on the '551 patent the very same day the patent issued against a third party.

3

exceptional case is most appropriate. Abbott's own employees — Dr. Sanghera and Attorney Pope — made misleading submissions to the PTO that consciously and intentionally failed to disclose — with intent to mislead — directly contradictory information the applicants made earlier to the EPO. The withheld material was of the type that would have raised substantial questions of patentability to a reasonable examiner. The misleading submission was the key to winning allowance (after twelve prior rejections by the examiner). None of the excuses proffered by Dr. Sanghera or Attorney Pope came close to excusing their willful conduct — which was both clear and egregious.

Significantly, both Dr. Sanghera and Attorney Pope were employed *by Abbott* at the time the inequitable conduct was perpetrated. Attorney Pope, an in-house lawyer, had taken over the prosecution work for Abbott on the '551 patent and Dr. Sanghera was in charge of ensuring Abbott had a strong patent portfolio and indeed signed the misleading declaration under oath. Abbott, through its own agents, was therefore well aware of the underlying facts that would give rise to any unenforceability defense that could later be made in litigation. Abbott cannot feign ignorance of the wrong. In addition, the primary item of prior art relied on for obviousness purposes was itself owned by Abbott's predecessor, listed many of the same inventors, and covered the identical subject matter. To consciously mislead the PTO into granting a patent and then to sue others on that patent, knowing how it had been procured, was an unforgivable abuse of our patent law, which has come to be the cornerstone of our country's intellectual property system, a system whose integrity is vital. Accordingly, this order finds by clear and convincing evidence that Abbott's suit on the '551 patent resulted in an exceptional case and that an award of fees and costs is warranted.[3]

### 2. THE OTHER ASSERTED PATENTS.

Abbott's remaining infringement claims, however, do not justify a finding of an exceptional case. Defendants have failed to make any showing of circumstances that would warrant any award of fees. The mere fact that summary judgment of invalidity was entered

---

[3] This finding is not based on litigation conduct but it is rather based on Abbott's inequitable conduct and its decision to sue on a patent knowing how it had been procured.

4

with respect to the '745 patent does not mean that Abbot's claims were frivolous. This is particular true considering the Court's invalidity finding was based on an item of prior art that was cited to the examiner during the '745 patent's prosecution. The only other ground cited to by defendants with respect to the '745 patent is a purported vexatious tactic taken on by Abbott during discovery in answering interrogatories. That discovery dispute though is at best ambiguous on the record. In regard to the '890 and '164 patents, defendants have not even attempted to make any substantive argument.

**CONCLUSION**

For the reasons stated above, defendants' motion for a finding of an exceptional case and for attorney's fees is **GRANTED IN PART AND DENIED IN PART**. Reasonable fees and costs are granted as related to the '551 patent. The motion is denied with respect to all other claims. A separate order shall issue setting forth the procedure to be following in setting the amount of the award.

**IT IS SO ORDERED.**

Dated: August 21, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE